The Grocers Bank and others

*v.*

John D. Neet and others.

1. A mortgagee who makes an absolute assignment of a mortgage to her agent, can claim no relief as against a *bona fide* holder to whom the agent assigned it as security for his own debt.

2. Such mortgagee, made a party defendant because she holds a third mortgage on the premises, cannot, by answer, set up such defence against the assignee. Her claim for relief should be made by cross-bill.

---

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. I. W. Scudder*, for complainants.

*Mr. W. C. Spencer*, for defendants.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage for $23,353 and interest, dated October 26th, 1875, on land in Jersey City. The mortgage was executed by John D. Neet to Winifred T. Hughes, and was by her assigned, by assignment dated November 15th, 1875, to James M. O'Donnell, and he, on the same day, assigned it to the complainant, Samuel B. White, president of the Grocers Bank, in trust for that bank, and as security for debts which he then owed the bank, and his liability to them as endorser of commercial paper by them discounted for him. Those debts and liabilities amounted to $26,369.77, besides interest. None of the paper has been paid, and O'Donnell has become liable to the bank upon all of it. No part of the debt existing at the date of the assignment has been paid. The complainant's mortgage is the first encumbrance on the mortgaged premises. The principal, by the terms of the mortgage, was payable on the 26th of October, 1877, and the interest was payable half-yearly; but the mortgage contained a provision that if any part of the interest should not be paid within thirty days after it should become due, then the principal should, at the option of the mortgagee or her legal representatives, become due at once. The interest being, as alleged in the bill, in arrear for more than thirty days from the time when it became due, the complainants exercised

the option, and elected that the principal should become due.

It appears that Neet, the mortgagor, on the 8th of November, 1875, thirteen days after giving the mortgage held by the complainants, executed a mortgage on the premises to O'Donnell, for $10,000 and interest, and that on the 6th of December following, less than a month afterwards, he gave another mortgage upon them, to Winifred T. Hughes, for $15,000 and interest, and on the 29th of the same month of December, he conveyed the property to O'Donnell.

Winifred T. Hughes, as holder of the third mortgage; Woolner Brothers, as holders of the mortgage of $10,000 to O'Donnell (which appears to have been assigned by him to them), and Neet and O'Donnell, are the parties to the suit.  Winifred T. Hughes and Neet only have answered. The former, in her answer, alleges that the mortgage held by the complainants was her property ; that she assigned it to O'Donnell, who was her agent, to be negotiated by him for her use and benefit; that the assignment to White was made without her knowledge or consent; that it is not binding on her, and that she is informed that it was made by O'Donnell merely as security for a previously existing indebtedness from him to the bank, contracted for his own benefit.  She also states, in the answer, that the mortgage held by the complainants was not due when the bill was filed, and is not yet; that on the 12th of November, 1875, three days before the date of the assignment by her to O'Donnell, and the assignment by him to White, she received from Neet certain household furniture and a lease for property in Paterson, altogether of the value of $5,500, in full satisfaction of the interest due and to become due on the mortgage now held by the complainants, up to the 26th of October, 1880, and, in consideration thereof agreed with Neet, by a written instrument, to extend the time for payment of the principal of the mortgage until the last-mentioned day.

Neet, by his answer, sets up payment of the interest up to October 26th, 1880. The bill prays a decree for deficiency against him.

It appears, by the testimony of Miss Hughes, that O'Donnell was, as she alleges, her general agent in the transaction of her business matters. She says she allowed him to manage her property and business affairs. According to her statement, he received all her money for her, and attended to and transacted all her business. Her statements on the subject are vague, and wholly unsatisfactory. Her ignorance as to her affairs is most remarkable. She appears neither to have, nor to have had, at any time, any knowledge of them. Her attack upon the complainants' title to the mortgage held by them cannot avail her. She, by the absolute assignment to O'Donnell, put into his hands all the indicia of ownership of the bond and mortgage now held by the complainants, and which she says belonged to her. He, by the assignment of them as his own absolute property, obtained an extension of time for the payment of his debt to the bank. The bank thus became the *bona fide* holder of the bond and mortgage for a valuable consideration, without notice of any equity against the title.

But, again, under the proceedings in this cause, she can obtain no relief against the complainants. Their legal title to the bond and mortgage is complete. She is made a defendant in respect of the mortgage of $10,000 held by her. She cannot, under the circumstances, attack the complainant's title by answer, but must do so by cross-bill.

The proof of the answer in respect to the payment of the interest up to the 26th of October, 1880, is by no means satisfactory.

The rent, $2,000 per annum, of the Paterson property, reserved by the lease, was payable in two equal annual payments, in advance, the term being for two years from the 12th of November, 1875. The bill of sale of the furniture was not made on the 12th of November, but on the 15th. Besides, the bill of sale itself shows that the furniture was

transferred by O'Donnell to Neet on the 12th of November, 1875, the day of the date of the lease.  The property leased was conveyed by O'Donnell to Neet on the 6th of November, 1875, and the latter gave a mortgage of $15,000 to him upon it of that date, which was acknowledged on the 11th of November, 1875, and recorded on the 15th.  On the 27th of December following, Neet conveyed the property back to O'Donnell.

The agreement in writing mentioned in Miss Hughes's answer, and in that of Neet, and therein alleged to have been executed and delivered by her to Neet, by which she, as she says, agreed to extend the time for the payment of the mortgage now held by the complainants until October 26th, 1880, is not produced, and no attempt is made to account for or excuse its non-production, though Neet, in his answer, alleges that it is in his possession, ready to be produced and proved.  Miss Hughes attempts to account for the non-production of the receipt which she says Neet gave her for the rent, but her attempt is by no means successful.  On cross-examination, she said that she had "lost it in some place, and could not find it."  On her re-direct examination, she said she last saw it in February, 1877; that her lawyer, Mr. Mackay, then sent her word that it was necessary to produce it, and she went to find it, and brought her papers into the sitting-room (she lives in O'Donnell's family), to look over them; that she was called out of the room very hurriedly, and when she returned her attention was called by a visitor to a paper which a little child had picked up and brought to him, and the visitor handed the paper to her, saying that it was a "valuable paper to have lying around."  She adds that she "laid it somewhere out of her hand, to send to the office of Mr. Mackay, and so she misplaced the paper and cannot find it."  Her testimony is not such as to command belief.  She not only professes to know nothing in regard to the property which she claims to own, but professes ignorance of matters about which she may reasonably be expected to be fully informed.

She testifies that O'Donnell has had all her money for five or six years; that she has always had money from her infancy, and when asked where she gave her money to O'Donnell, she replied that it was on Staten Island, but she does not know when it was. To the question whether she gave it to him in checks or bills, she answered that she thought it was in bonds, but she did not know how she gave it to him. In this and very many other respects which it is unnecessary to specify, her testimony is justly subject to adverse criticism. Her standing in this suit is simply that of the holder of a mortgage subsequent to that of the complainants. Her attempt to show that the complainants' mortgage is not due, and that all interest upon it has been paid up to the 26th of October, 1880, has not been successful. The evidence shows only what appears to have been an attempt on the part of O'Donnell, with her aid, to embarrass, if not to defeat, the complainants in foreclosing their mortgage. The alleged transaction of the payment of the interest was in its character very unusual. The hand of O'Donnell is apparent in it. The whole thing is evidently a mere artifice. There will be a decree for the complainants.